UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELINA CANZANESE and
VICTOR CANZANESE,

                                        Plaintiffs,            12-CV-0153(Sr)
v.

OTIS ELEVATOR COMPANY,

                                        Defendant.
_____

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #5.

Currently before the Court is defendant's motion for summary judgment. Dkt. #17. For the following reasons, defendant's motion is denied.

## FACTUAL BACKGROUND

As recorded by video surveillance, at 7:34 and 30 seconds on the evening of November 18, 2009, the door to elevator #5 at the Seneca Niagara Casino opened and an unidentified woman in a pink shirt enters the elevator, followed by an unidentified man in a white shirt at 7:34 and 32 seconds, followed by Victor Canzanese at 7:34 and 34 seconds. Dkt. #20, ¶ 1 & Dkt. #25. As Angelina Canzanese approached

the elevator, the door began to close.  Dkt. #25.  Mrs. Canzanese's right arm came into contact with exterior of the elevator hoistway door at 7:34 and 36 seconds, causing her to fall backwards to the floor and break her left hip.  Dkt. #17-6, p.10 & Dkt. #25.

The passenger elevators at the Seneca Niagara Casino were manufactured by Otis Elevator and installed in 2005.  Dkt. #21, ¶ 10.  They are maintained by Otis Elevator Company pursuant to a comprehensive preventive maintenance agreement which specifically includes performing "the adjustments required to maintain the original door opening and closing times, or as otherwise mutually agreed within limits of applicable codes."  Dkt. #27-1, p.2.

Ronald Wheeler, route mechanic for Otis Elevator, testified at deposition that he has maintained the fourteen elevators at the Seneca Niagara Casino since it opened in 2005.  Dkt. #18-3, p.6.  He is generally on the premises every work day.  Dkt. #18-3, pp.7-8.  During a general maintenance visit, scheduled approximately once or twice a month, Mr. Wheeler testified that he would ride the elevator and observe door operation and leveling of the elevator.  Dkt. #18-3, p.12 & 15.  Mr. Wheeler did not recall any repair work on the doors of elevator #5 during the year prior to Mrs. Canzanese's injury and was unaware of anyone being struck by the elevator doors at the Seneca Niagara Casino prior to Mrs. Canzanese's injury.  Dkt. #18-3, pp.16, 27 & 30.  There is no dispute but that there were no prior complaints, code violations or accidents regarding elevator #5.  Dkt. #20 & Dkt. #29, ¶¶ 10-14.

Mr. Wheeler testified that when the elevator was installed by Otis Elevator, it was set with a dwell or delay time for the closing of the elevator doors. Dkt. #18-3, p.17.  Mr. Wheeler testified that he did not adjust the dwell time nor was he aware of anyone else adjusting the dwell time on the door of elevator time at any time prior to Mrs. Canzanese's injury.  Dkt. #18-3, p.18.  Mr. Wheeler also testified that there is a full length beam detector which prevents the elevator door from closing when someone walks through the elevator door opening.  Dkt. #18-3, p.20. Specifically, Mr. Wheeler explained that there is a dwell time for the doors to remain open overall and a shortened dwell time for the doors to remain open following the passing of an individual past the sensor.  Dkt. #18-3, p.29.  Mr. Wheeler checked the sensors in the full length beam detector as part of his general maintenance visits.  Dkt. #18-3, p.21.

Mr. Wheeler explained that the sensor for the full length beam detector was mounted on the interior car door.  Dkt. #18-3, p.27.  Based upon his observation of the video, Mr. Wheeler testified that Mrs. Canzanese did not activate that sensor.  Dkt. #18-3, p.27.  Instead, Mrs. Canzanese made contact with the exterior hoistway door. Dkt. #18-3, p.27.  Mr. Wheeler was not called to inspect the elevator following Mrs. Canzanese's injury.  Dkt. #18-3, p.33.

Plaintiffs commenced this action in the New York State Supreme Court, County of Niagara, on January 18, 2012, seeking damages for personal injuries sustained by Angelina Canzanese and loss of consortium by Victor based on negligence, manufacturing defect, design defect and breach of warranty theories of

liability. Dkt. #1, p.7. The action was removed to this Court based upon diversity jurisdiction on February 21, 2012. Dkt. #1.

Robert Offerman, a certified Qualified Elevator Inspector and President of R.A.O. Elevator Inspection, Inc., which provides certified elevator inspections, maintenance evaluations, accident investigations and expert witness services, opines that

> Mrs. Canzanese did not have enough time to enter the path and break the beam of the electronic door reopening device which is mounted to the car doors. She was struck and knocked down by the closing hoistway door, causing her injuries.

Dkt. #28, ¶¶ 15 & 19. More specifically, Mr. Offerman opines that

> The immediate closing of the car doors and the connected hoist way doors after reaching the fully open position is not in compliance with Federal Standard A117.1-407.3.5 which states "Door Delay. Elevator doors shall remain fully open in response to a car call for 3 seconds minimum.

Dkt. #28, ¶ 49. Mr. Offerman further opines that "the LAMBDA III-D system failed to operate as it was supposed to, and failed to sense Mrs. Canzanese as she entered the elevator." Dkt. #28, ¶ 58. Specifically, Mr. Offerman opines that the LAMBDA III-D system "is meant to protect passengers when they are in the doorway of the elevator by sensing the passenger's presence and causing the elevator door to reopen without touching the passenger" and "is meant to project not only in the doorway but also out into the hallway." Dkt. #28, ¶ 55-56.

- 4 -

Nickolas Ribaudo, a certified Qualified Elevator Inspector by the National Association of Elevator Safety Authority International, and a certified Code Enforcement Official with the State of New York, examined elevator #5 on February 18-19, 2013. Dkt. #18-9, p.14.  Mr. Ribaudo determined that the door close time of 2.34 seconds was code complaint; the LAMBDA III-D door protection system was code compliant, the door nudging delay of 23 seconds was code compliant, the actual door delay of the hoistway door was 4.2 seconds, exceeding the code minimum of 3 seconds, and the dwell time of the door at the lobby, as measured in 6 tests, was code complaint at 7.6 seconds, 8.3 seconds, 7.8 seconds, 7.8 seconds, 7.9 seconds, and 7.7 seconds. Dkt. #18-9, p.15. In response to the video surveillance of the incident, Mr. Ribaudo opined that

> Mrs. Canzanese never crossed the threshold between the hoistway doors and the car doors.  Her body never reached the position between the hoistway doors and the car doors that would trigger the detector edge to re-open the doors. Moreover, the door never attempted to close.  No one was holding the door open, no one was blocking the door, and the nudging process did not commence.  Simply, by all objective measures and observations, the door remained open for well more than three seconds.

Dkt. #18-9, p.10.

Subsequent to his deposition, Mr. Offerman provided the following supplement to his original expert disclosure:

> Based upon the Defense Expert Disclosure of Mr. Ribaudo, the subject door was equipped with a LAMBDA III-D protection system.  This system is meant to protect passengers from being struck by elevator doors.  It is meant to protect passengers when they are in the doorway of the elevator by sensing the passenger's presence and causing the elevator door to reopen without touching the passenger.

> It is also meant to protect passengers as they enter or exit the elevator as the system is meant to project not only in the doorway but out into the hallway. This feature is particularly important for slow moving passengers who may be able to clear the door area but not the hallway door path.
>
> The plaintiff, Angelina Canzanese, was struck by the hallway door as she attempted to enter the elevator. In my opinion, the LAMBDA III-D system failed to operate as it was supposed to and failed to sense the plaintiff as she entered the elevator.

Dkt. #18-11, pp.6-7.

## DISCUSSION AND ANALYSIS

Defendant argues that there is no evidence of negligence, a manufacturing defect, design defect or breach of warranty. Dkt. #19. To the contrary, defendant asserts that there were no complaints, incidents or injuries involving guests entering or exiting elevator #5 prior to this incident and no evidence to suggest plaintiff's injury was caused by a defective condition or malfunction. Dkt. #19.

Plaintiffs respond that the doctrine of *res ipsa loquitur* prevents summary judgment on their negligence claim. Dkt. #30, p.3. Specifically, plaintiff's expert opines that video demonstrates that the door closed immediately after Mr. Canzanese entered the elevator, in violation of the standard requiring a 3 second delay, and that the LAMBDA III-D system, if operating properly, should have detected Mrs. Canzanese in the hallway and prevented the elevator door from closing. Dkt. #30.

Defendant replies that *res ipsa loquitur* is not applicable because there is no evidence to suggest that plaintiff's injury was caused by any malfunction in the operation of the elevator doors. Dkt. #33, p.5. Defendant argues that plaintiff's injury "absolutely could have, and did, happen in the absence of negligence. Specifically, the plaintiff walked into the doors." Dkt. #33, p.5.

"An elevator company which agrees to maintain an elevator in safe operating condition may be liable to a passenger for failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found." *Rogers v. Dorchester Assoc.*, 32 N.Y.2d 553, 559 (1973). In such a case, the elevator company may meet its initial summary judgment burden by producing competent evidence in admissible form showing that the elevator was functioning properly before and after the accident, and that, even if a defect existed, the company did not have actual or constructive notice of any such defect. *Ulerio v. Schindler Elevator Corp.*, No. 12 Civ. 01496, 2014 WL 1303710, at *4 (S.D.N.Y. March 26, 2014); *Morton v. Otis Elevator Co.*, No. 07-CV-469, 2011 WL 2199848, at *5 (W.D.N.Y. June 7, 2011).

In the instant case, defendant has satisfied its burden of demonstrating the absence of actual or constructive notice of any defect in the operation of the elevator doors. The maintenance and inspection records, both before and after plaintiff's injury, fail to suggest any concerns with the closing of the elevator doors and there is no record of prior complaints regarding the closing of the elevator doors.

If the defendant meets its initial burden, the plaintiff must come forward with sufficient evidence to raise a triable issue as to whether the elevator company either created or should have known of the defective condition that allegedly caused plaintiff's injury.  *Morton*, 2011 WL 2199848, at *5.  In other words, there must be a question of fact as to whether defendant either created the defect or had actual or constructive notice of the defect.  *Skidd v. JW Marriot Hotels & Resorts*, No. 06 Civ. 1554, 2010 WL 2834890, at *4 (S.D.N.Y. July 8, 2010).  To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit the defendant to discover and remedy it.  *Ulerio*, 2014 WL 1303710, at *4.

*Res ipsa loquitur* is an evidentiary doctrine which "permits the inference of negligence to be drawn from the circumstances of the occurrence" when the plaintiff can establish that: (1) the event is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to a voluntary action or contribution on the part of the plaintiff."  *Dermatossian v. New York City Trans. Auth.*, 67 N.Y.2d 219, 226 (1986).  "Only when these essential elements have been established, after the plaintiff has first demonstrated the nature of the instrumentality which caused the injury and its connection with the defendant does a *prima facie* case of negligence exist."  *Id.* at 227 (internal citation omitted).

Upon review of the videotape of this incident, the Court finds a triable issue of fact as to the application of the doctrine of *res ipsa loquitur*. Specifically, the Court finds a question of fact as to whether the elevator doors installed and maintained by defendant should have closed so quickly behind Mr. Canzanese and whether Mrs. Canzanese's presence at the threshold of the doors should have been detected by the door protection system. *See Stone v. Courtyard Mgmt. Corp.,* 353 F.3d 155, 161 (2d Cir. 2003) (application of *res ipsa loquitur* appropriate where automatic doors closed on plaintiff as she was entering hotel).

## CONCLUSION

Based on the foregoing, the motion for summary judgment (Dkt. #17), is denied.

**SO ORDERED.**
DATED: Buffalo, New York
February 2, 2015

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**